Good morning, everyone. We'll hear argument in six cases this morning, beginning with Appeal No. 23-1072, Roger Day v. the Warden T. J. Watson. Mr. Harding, good morning. Good morning, Your Honors. May it please the Court, my name is Elliot Harding. I'm here on behalf of the appellant in this case, my client Roger Day, Jr. This case presents some I think the appellees recognize this much as well, but before getting into the substance and the merits of the claims regarding the rule of specialty and the extradition treaty between the United States and Mexico, and whether or not aiding and abetting liability establishes alternative offenses that need to be considered in an extradition order, I think it would be most appropriate to address the Court's ability to access the substance and the merits of the claim. We're here on a successive collateral challenge to Mr. Day's convictions pursuant to 28 U.S.C. 2241. And the appellees in their response brief noted some intervening substantive changes in the law from the Supreme Court since this case was noted for appeal, that ends the case of Jones v. Hendricks before the Supreme Court, where the Court effectively nullified what was the pre-existing test for the safety vow exception to 2241 challenges, successive challenges in this case. But we believe, and we noted in our reply brief, that this is the unique style of case that is still applicable for a challenge under 2241, that is due to the jurisdictional component of the claims. And that is if the Court addresses the merits and finds in favor of my client, it will have effectively found that the Eastern District of Virginia lacks jurisdiction pursuant to the rule of specialty that exists within the treaty between the United States and Mexico. What do we do if we get to the merits? Let's just say there, for the sake of argument, there's a jurisdictional exception in Jones. If we get to the merits, how does your client not fail under our old test? Particularly the second prong, when he presented, he filed a 2255 petition, and he presented this to the exact same argument in the Eastern District of Virginia, and the Fourth Circuit denied a certificate of appealability. So wouldn't you be asking us to do the exact same thing that the Fourth Circuit wouldn't? Montana against Cross is the primary reason that we don't believe the litigation bar applies in this case, because in page 4 of the Eastern District's opinion denying the original 2255, the Court found that Rosemond was not a substantive change to the law, whereas Montana against Cross, which was decided by this Court, did find that it was a substantive change to the law, and therefore applied it retroactively. And so it's our position that we're here today in this circuit because of Montana against Cross. Montana against Cross did not find that there was a substantive law change, and it wasn't retroactive. We wouldn't have a claim, and so we recognize that. Rosemond was raised in the original 2255, but it was not available in direct appeal. We'll note that part. But in the 2255, Rosemond had been already decided by the Supreme Court. It was raised, but again, the District Court had found that it was a substantive change. Mr. Harney, I have a similar question to Judge Kirsch. It's hard for me to see how anything at all in the rule of specialty claim that Mr. Day presses here, why it has anything to do with Rosemond or Montana versus Cross. That's the hard part for me to see. I think the argument roots itself, as you articulated in your brief, in the U.S. Supreme Court's decision in Rousher. But of course, the Fourth Circuit considered that precise argument in the prior 2255 perceived, well, no, actually on direct appeal, not in 2255, on direct appeal. So I don't know, I'm not even sure we get to 2255E in the Savings Clause. It seems to me this is just a straight claim preclusion. Well, Your Honor, we would note that not just through Rosemond, but Montana against Cross, but the Supreme Court and the Circuit have delineated particular elements. And the words were used specifically when it comes to a Section 2, aiding and abetting instruction that's given to a jury, as it was in this case. And that is, it's referred to as a participation element and an intent element. And it requires specific, unique facts that need to be established for aiding and abetting liability to be found. Had the courts in Rosemond or in Montana against Cross not specifically recognized that there are unique facts that might— It was long, long before any of those cases. The law seemed pretty clear to me that you could be convicted on an aiding and abetting theory, even though it wasn't charged alongside principal liability. Nothing about those Supreme Court decisions affected a change in law. And when I look at the way the Fourth Circuit addressed the argument on direct appeal, it seems to be almost a mirror image of what you're arguing in your blue brief. I don't see anything different. I think that there's been a substantive change in the law since Rosemond and Montana against Cross in that it establishes what— What exactly is the—how would you articulate it in a sentence or two? What did the Supreme Court change? The facts that are necessary to be proven for the purposes of aiding and abetting liability were clearly described in Rosemond and Montana against Cross in that there's a factual predicate of both a participation element and an intent element. I thought the rule of specialty argument, though, that you were making is that Mexico extradited your client on the misunderstanding that he could be convicted under 18 U.S.C. Section 2 as an aider and abetter. Mexico was never given the opportunity. Right. So they never considered that as your point. That is our primary argument. And the issue is after Rosemond and after Montana against Cross in this circuit, what we have here is the fact that Mexico was denied the ability to determine— Now, that's exactly the argument he made in the Fourth Circuit. Correct. Exactly. But Rosemond didn't exist at that time, and Montana against Cross certainly hadn't been decided at that time. And so for the purposes of whether or not Mexico should have been given the sovereignty and the opportunity pursuant to the treaty to determine whether or not the same willful acts that underlie the participation and intent elements of Section 2, and to act as if domestically we concede that Section 2 is somewhat considered just a theory of liability, as the Fourth Circuit said. But the real issue is, is post-Rosemond, we recognize that—and post-Montana against Cross—we recognize that they're called elements, and the courts have specifically described what factual predicates have to be established to receive that aiding and abetting liability. And for our purposes and pursuant to the treaty, it's our argument that those constitute alternative offenses pursuant to the treaty. Now, what we're asking the court to do is recognize that post-Rosemond and post-Montana against Cross, for the purposes of the treaty and international law, you know, usurping just traditional domestic interpretation, these do establish alternative offenses pursuant to the treaty. Because, you know, the government might argue, well, it's just a theory of liability, we're misconstruing the term element. But there's a case, United States against Richardson, that it's from the Supreme Court in 1999 that explicitly says if particular facts have to be proven in order to convict, whether they're called—especially in this case referred to as elements—they do create an alternative offense. And in this case, we would argue it's an alternative offense pursuant to the treaty. Now, the treaty argument's been available to you a long time, and the Fourth Circuit discusses it too. Yes, Your Honor, but they didn't have the opportunity to review it in light of the Supreme Court's delineation between participation and intent elements of aiding and abetting liability. The only available aspect of the treaty argument that was there before the Fourth Circuit on direct appeal and in the 2255 would be that we also argue that there is a fact that is necessary to be proven for aiding and abetting liability that isn't necessary for a principle, and that is that a principle actually exists. You can't have aiding and abetting liability without establishing a fact, that being a principle, engaged in the substantive crimes itself. And there is strong reason to believe Mexico would not have allowed for Mr. Day to be extradited pursuant to aiding and abetting theory, because they had already struck multiple— Why? Why? I have trouble with that, okay? If they're extraditing him based on him being a principle, why would they worry about extraditing him on an aid or abetter liability theory? Well, there are a few reasons why we say that. First, the extradition order itself is about 168 pages, I believe. It's referenced in the brief. The courts in Mexico denied extradition for multiple other charges. But aiding and abetting is not a charge. It's just a theory. Under United States domestic law, but we violated the treaty by not giving Mexico the ability to make that determination themselves. But would we have to give Mexico—would we have to identify all the prosecution theories in every extradition treaty in order to satisfy the rule of specialty? You see what I'm saying here? Where do we draw the line to say we have to notify of certain theories but not others? We believe Article II of the treaty tells the parties, in this case the United States, what it needs to tell Mexico when it comes to charging the decision and what they're seeking extradition for. Specifically, paragraphs 1 and 3 of Article II in the treaty say that extradition can be for any particular series of willful acts which fall under those clauses in the appendix of the treaty or crimes that are punished by both parties. But specifically, paragraph 4 of that article also says that extradition shall be granted for the attempt to commit, the conspiracy to commit, or the participation in the execution of the offense. To say that we don't need to notify either party or Mexico doesn't need to notify the United States that they plan to proceed under the participation theory is to say that it's a superfluous clause altogether in Article II of the treaty. Why else would we have that? If Mexico were to be given, and respectfully we did reserve some time for rebuttal, but if Mexico had been given the opportunity, and I'll note in the government's brief, in fact the trial court said the same thing and the government cited it in their brief and we argued it in our brief, and that is the trial court, before they granted the instruction for aiding and abetting, said Mr. Day is either a principal or he's nothing at all. And the government argues that, too, in their brief. Yet, Mexico should have been the one that was given the opportunity to say that in the extradition order. You want to reserve the remainder of your time? Yes, Your Honor. Okay, very well. Mr. Reitz, good morning. May it please the Court, Brian Reitz for Respondent, TJ Watson. There are several procedural barriers that Mr. Day cannot overcome to raise his claim here. The Court seemed most interested in the re-litigation bar, so I'll start there. Mr. Day has raised this claim before. He raised the Rauscher claim on direct appeal, and on 2255 he raised the Rauscher plus Roseman claim. Those are the exact claims that he's raising here. So under 2244A and this Court's precedence, this Court cannot stand in judgment of a sister circuit because the Fourth Circuit has already decided this issue. Second, while it wasn't discussed, I do want to touch on the topic of jurisdictional claims and 2241 and Jones. Mr. Day's jurisdictional claim is divorced from the statutory text and the Supreme Court's holding in Jones. Turning to the statutory text, 2255E says that 2241 is only available to prisoners if the plaintiff's name is not mentioned. But by the plain language of 2255, jurisdictional claims may be raised. Jurisdiction claims are mentioned in both 2255 and 2255A and 2255E. Doesn't that circle us right back to where you started? In fact, they were raised. Yes, that was going to be my second point based on that, that they were raised. So 2255, by its face, is not inadequate or ineffective, and based on what happened in this particular case, is not inadequate or ineffective because Mr. Day raised his claims. Yeah, to the extent that there's anything new from Rosemond or Montana v. Cross, for that matter, the new is only statutory. Correct, Your Honor. And before Jones, that may have had some footing in our court, but I don't see after Jones how it possibly does. No, Jones explicitly said there are two, quote, two and only two ways to access a second or successive collateral petition, and those are found in 2255H, which are newly discovered evidence or new rules of constitutional law. Rosemond is neither. It is clearly a statutory interpretation case, and it was a statutory interpretation case raised in the 2255. So I guess the one new case that Mr. Day raises, Montana v. Cross, but besides being incorrect on what Montana v. Cross says, that just circles back to the relitigation bar, because this court cannot use its own cases to stand in judgment of a sister circuit, or maybe put it differently, Mr. Day cannot use this court's precedents to stand in judgment of what the Fourth Circuit has already said. So the relitigation bar precludes access to Montana v. Cross. If there are no further questions on the procedure, I would just note that considering the state of the law in Section 2, Mr. Day cannot show a miscarriage of justice, even if he was able to get to the substance of his claim. State of the law at the time of the extradition? Right, not so much today. Today, it's completely clear. But at the time of the extradition, the point that Mr. Harding was arguing about, the distinction between principal and aider and abettor, kind of at the root of Judge Kirsch's question, it was clear at the time of the extradition. It was clear then and now, yes, Your Honor. Okay. Thank you. Thank you, Mr. Reitz. A few points quickly. As to the Jones decision, the Jones court reiterated there's a jurisdictional challenge exception, and it's cited, and it's on page 1872 of the opinion. It was also explicitly referenced in Judge Jackson's dissent, where she was referencing the majority's noted exception. And it quotes, even in Ex parte Siebold, which is an 1880 case, it held that the constitutionality of a prisoner's statute of conviction can be reviewed on habeas as going to jurisdiction. And so it's our position that if the court gets to the merits of the case and recognizes Mr. Day's argument as being valid, the jurisdiction of the courts was struck once the additional expansion of the facts and elements that could convict him, that being aiding and abetting liability, were given to the jury, and there was no special verdict. As to the relitigation bar, we want to reiterate that on page 4 of the 2255 opinion that was issued in Richmond District Court, the court noted that Rosemond did not establish a substantive change. Montana against Cross has said that it did. And so to say that this court can't review the claims because there's a different avenue for review, we would disagree. Do you agree that the substantive change is statutory? If it's anything, it's statutory, as opposed to constitutional? Well, when it comes to the—no, we wouldn't conceive that it's solely statutory. It is statutory, but because of the way that it falls within the extradition treaty that we're dealing with, it rises to a constitutional level. And that is—the Supremacy Clause puts the treaties above everything. It's above our own domestic review, and the court was correct to say that the status of aiding and abetting liability was established even at the time of extradition. But the issue is, is Mexico was denied the ability to make that decision. And post-Rosemond and Montana against Cross, we suggest that in light of those opinions, it's clear there are different elements, or at least facts that are required to be proven. It can be called whatever, but I think the court was clear when they said elements, that needed to be given to Mexico when making that decision. Thank you. Okay. Mr. Harding, very well. Mr. Reitz, thank you for your argument. The court will take the case under advisement.